IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff, No. 3:20CR00005-BSM-2

v.

LAKENDRA SAMON THOMAS, Wednesday, August 17, 2022
Little Rock, Arkansas
Defendant. 12:06 p.m.

**TRANSCRIPT OF SENTENCING HEARING**
BEFORE THE HONORABLE BRIAN S. MILLER,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

On Behalf of the Plaintiff:

MS. ERIN O'LEARY, Assistant United States Attorney
United States Attorney's Office
Eastern District of Arkansas
Post Office Box 1229
Little Rock, Arkansas 72203-1229

On Behalf of the Defendant:

MR. RONALD L. DAVIS JR., Attorney at Law
Ronald L. Davis Jr. Law Firm, PLLC
Post Office Box 3432
Little Rock, Arkansas 72203

Defendant present

*Proceedings reported by machine stenography. Transcript prepared utilizing computer-aided transcription.*

P R O C E E D I N G S

THE COURT: This is United States of America versus Lakendra Thomas. The case number is 20CR05. Ms. Thomas is in the courtroom with her lawyer, Ron Davis. The United States is being represented by Erin O'Leary. Is there any reason to come to the bench for an in camera discussion? Any motions?

MR. DAVIS: Judge, not a motion. I would like to advise the Court of something.

THE COURT: Okay.

[Sealed proceedings under separate cover.]

MR. DAVIS: Other than that, there's no other motion or anything.

THE COURT: Now, history-wise, Ms. Thomas, the information I have in front of me indicates that you entered your plea of guilty on May the 20th of 2021 to Counts 1 and 2 of the superseding indictment, which charged you with conspiracy to possess with intent to distribute and distribution of methamphetamine and the distribution of methamphetamine. Now, you've been represented by Mr. Davis. Do you have any complaints that you want to put on the record now?

THE DEFENDANT: No, sir.

THE COURT: Are you satisfied with the legal representation he's given you?

THE DEFENDANT: Yes, sir.

THE COURT: And I told you at your plea that probation

would go out and perform a presentence investigation and would issue a report. I have a report that's dated July the 12th of 2021. It was revised on August the 11th of 2021. Have you had a chance to go over that report?

THE DEFENDANT: Yes, sir.

THE COURT: And, Mr. Davis, I received your objections to paragraph 21 and 22. And just so you understand, those, Ms. Thomas, Mr. Davis is objecting to two two-point enhancements. In paragraph 21, it's an enhancement for having a firearm at the premises or in possession at the time of the offense. And paragraph 22 is a two-point enhancement for the premises being deemed a premises where drugs or controlled substances were being maintained or distributed. I've looked through the record. I've received the response from probation.

Mr. Davis, I'm going to overrule your objection to those. I think those are properly supported by the record, but you've made your record. If you want to supplement that objection, you can do so now.

MR. DAVIS: Your Honor, in light of that and because of conversations I had with counsel, I think the government's position is going to be that if we proceeded on paragraph 22's objection that they would then consider that not in compliance with accepting responsibility with regard to the third point.

THE COURT: You are saying you withdraw the objection?

MR. DAVIS: Yes.

THE COURT: Okay. You can do that. We'll let the record reflect that that was done. All right. So here's what we have. Subject to the objection to paragraph -- does the government have any objections?

MS. O'LEARY: No, Your Honor.

THE COURT: Subject to the overruling of the objection to paragraph 21, now that's not in issue, is it, Mr. Davis, paragraph 21?

MR. DAVIS: No, sir.

THE COURT: So subject to the objections and the rulings that have been made, I will adopt the presentence report.

Now, Ms. Thomas, I think I discussed it with you at your plea that in the federal system we have our law that tells me what the minimum and maximum sentences are that I can give you. I have to give you a sentence within the range provided by the law. In addition to the law, we have sentencing guidelines to help me determine what an appropriate sentence is. I'm not required to give you a sentence within the range provided by the guidelines as long as I give you a sentence within the range provided by the law. Do you understand that? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Based on the law, the range of punishment for -- hold on just one second. I don't have my indictment

here.

MS. O'LEARY: Your Honor, would you like a copy?

THE COURT: Well, I was going to say, which counts -- was it Count 1 and what that she pled guilty to?

MS. O'LEARY: Ms. Thomas pled to Count 1 and Count 2. She pled straight to the superseding indictment.

THE COURT: So in Count 1 of the superseding indictment -- that was the conspiracy to possess with intent to distribute methamphetamine -- the range of punishment for that count is from ten years on a minimum to a life of imprisonment, a fine of up to $10 million, supervised release of from five years to life. There's also a mandatory $100 special assessment, and probation is not authorized. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: With regard to Count 2, which is the distribution of methamphetamine, the range of punishment is from ten years to life of imprisonment, a fine of up to $10 million, supervised release of from five years to life and a $100 special assessment, and probation is not authorized. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: With regard to the sentencing guidelines, the information I have is that you have a base offense level of 32. You receive a two-point enhancement for possession of a

firearm. That takes you to a 34. You receive a two-point enhancement for the maintenance of a drug premises, which takes you to a 36. You receive a two-point reduction for acceptance of responsibility, which brings you back down to a 34.

And does the government move for a third point?

MS. O'LEARY: Yes, Your Honor.

THE COURT: That takes you to a total offense level of 33. You have zero criminal history points, which results in a criminal history category of I.

Someone who has a criminal history category of I with a total offense level of 33 has a sentencing range of 135 to 168 months of imprisonment, a fine of from $35,000 to $10 million. The guideline range for supervised release is from five years to life on both counts. Probation is not authorized, and there's a special assessment of a hundred dollars that's mandatory. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, Mr. Davis, do you want to make an argument for what an appropriate sentence would be?

MR. DAVIS: Yes, Your Honor. Your Honor, quite frankly, this is a very difficult case. She's from my hometown. She's a young lady that but for some better decisions or choices of boyfriends I think would be in a much different position than she is now. All too often we see similar situations.

She's a mother of four children, Your Honor, school-aged

kids, yet she finds herself in a position with a mandatory minimum sentence of at least ten years, a guideline range actually more than the minimum sentence provided by law.

And the kinds of arguments that I would like to make, I could make them and make everybody in the courtroom feel good, but I know there's some restraints the Court has in terms of what the sentence should be.

As you are aware, in most of these instances, guilty pleas are made to an agreement of some sort that puts the defendant in a better position than they would have been had they pled to the indictment. In this case, to counsel's credit, up until literally the last couple of days over the weekend prior to trial, we tried to work an agreement out. Quite frankly, Ms. Thomas I think was being overly influenced by the co-defendant in this case. There's no other way to put it. And she made decisions with regards to trial, preparation for trial, under that influence, as wrong as it may have been. And it may look like she's making excuses, but those are what the facts are.

So we didn't have the benefit of a plea agreement, which required her then to plead to the indictment. As a result of that -- and now, with having to deal with the weapons involved, someone who would otherwise be a prime candidate for safety valve and a reduction is someone who, as best I can tell from the file, engaged in a singular transaction, that I think could obviously be proven in this case, is now dealing with the entire

conspiracy of the conduct of this person that influenced her at the time the warrant was executed. Thank God we don't have a murder charge somewhere on us because of the shooting that the co-defendant did. It's just a sad, sad case, Judge.

But my hands are somewhat tied. I can't argue safety valve. I couldn't in good faith go forward with the objections that we made after further consideration of the four-point enhancement. So rather than looking at a guideline range that's right about 120, 121, to start the conversation, we're looking at a guideline range of 135.

She has no money to show for it, nothing. And it's easy to say, well, she made bad choices. And she did. But when you look at the totality of the circumstances, I'm asking the Court to grant a variance down to the 120 month, 120 months, which would be the ten-year mandatory minimum in this case. And that's pretty much all I can ask the Court to do. We can go through all of the factors and go through this academic exercise of why you ought to do that or not. And I don't know that I would prevail on that argument. I'm just going to ask you to do it anyway because ten years is more than enough time to accomplish all of the goals that the sentencing is supposed to achieve. She will have an opportunity to get some vocational training. She won't be under the influence of individuals that would cause her to end up in this situation again. So I don't have legal arguments. I just have the Catholic Hollow/Golden

Rule/do-right argument.

THE COURT: Now, you know what he's doing, don't you? Now, Ron Davis knows he didn't grow up in Catholic Hollow, but he knows I did, so he is trying to talk to me. He is pulling my heart strings. My folks were emancipated in 1861 and moved to Helena and lived on Beech Street up in Catholic Hollow. I moved from Catholic Hollow five blocks over -- four blocks over in 1968. So for a hundred and sixty to seventy years my folks have been within a couple of blocks, and that's what he's talking about. So don't listen to Ron Davis. Do not pay attention to that argument.

MR. DAVIS: Judge, I think you get the point.

THE COURT: I get the point. Let me ask you this question. Typically I have a first-time offender -- and here's the funny thing, and I say this to the family too. Sometimes you have a first-time offender and you say it's the first time I got caught, because sometimes people have been doing stuff for hundreds of years, and they finally get caught, right? So the term "first-time offender," it means the first time ever appearing in a courtroom and being charged and going through this. I don't know how long we've been dealing or Ms. Thomas has been doing this. I have no clue. But typically with a first-time offender I would give some credit to the fact that this person has never been in a courtroom before.

Here the only credit I could give Ms. Thomas would be 15

months. And I know the government's position probably is we have all the defendants, and we've dealt with this case for some time now, this is a prime case for a guidelines range. I know the government a lot of times is restrained because the office takes a position that the guidelines are appropriate. But taking all of that into consideration, what is the position of the government? I don't mean to make your argument for you before I actually turn it over to you to argue.

MS. O'LEARY: No, not at all, Your Honor. One, I'll start with saying I agree with Mr. Davis that this is a sad case. I feel for the children that are affected who were present during the shooting when law enforcement went in to arrest Mr. Moore and Ms. Thomas. It's a difficult and sad situation. And because of the reasons that we have discussed, Ms. Thomas is not subject to a safety valve, and the facts support that.

I recognize the Court's question here is what's the true difference between the mandatory minimum of 120 and the low end of the guideline range, which I believe is 135 months. You know, I frankly, to be candid with the Court, which I always try to do, I assumed the Court would give her the 120 months.

I do believe that if you look at the factors that are to be considered, the ones that jump out at me are that in this case that no matter if she's sentenced to 120, 135 or something else, I recognize it's a long sentence. But I also think that we take

into consideration -- I know we're supposed to take into consideration the seriousness of the offense and to promote respect for the law and to afford adequate deterrence, which the Court knows I say this. I don't always argue deterrence.

I do think it's relevant here because you have someone here who is considered, quote, the girlfriend. But she was charged, and she has accepted responsibility for being a co-conspirator. That is very serious. That's not the first time that she's been involved with someone who has broken the law and who has been facing or is facing or serving time in federal prison for drug trafficking. I won't go into that. That's not why we're here.

But it is a sad circumstance, and there is no real meaningful difference between 120 and 135 except for, if you look at those factors, those are the factors that speak to me on considering a sentence.

Again, I just assumed the Court would give her the mandatory minimum because, no matter how you look at it, you have someone who has no priors and who is facing a mandatory minimum.

THE COURT: Okay. Ms. Thomas, do you want to make a statement before I pronounce your sentence? You are not required to, but you can.

THE DEFENDANT: No, sir.

THE COURT: I'm going to order you to the Bureau of Prisons for a term of 120 months. I am going to order you to

five years of supervised release upon your release. As part of your supervised release, I'm going to order you to substance abuse treatment, and I'm going to order that you refrain from the use of alcohol during the course of treatment. And your treatment may include drug and alcohol testing and outpatient counseling. You will have to pay the $10 co-pay.

I'm also going to order you to receive a mental health assessment. And if it's determined that you need treatment or counseling, that will be given to you. You will have to pay the $10 co-pay for that. Both of those are based on your ability to pay.

I'm not going to order you to pay a fine, but I am going to order you to pay or to cooperate in the collection of DNA. I'm going to order you to pay the hundred dollar mandatory assessment for both counts, which will be $200.

Now, as far as where she serves her time, Mr. Davis, do you have a recommendation?

MR. DAVIS: Whatever closest facility down in Mississippi, I think.

THE COURT: Do this for me, Mr. Davis. Check and see what the closest facility is, and then email Laura, and we will include that in the judgment.

Now, you have 14 days in which to appeal, Ms. Thomas. If you cannot afford the costs of the appeal, you can ask for leave to appeal in forma pauperis. If it's determined that you cannot

afford it, you will be allowed to pay your filing fee in installments, or your filing fee will be waived. If you cannot afford a lawyer on appeal, one will be appointed to represent you. But the main thing is, if you choose to appeal, you have 14 days in which to do it. Do you understand?

THE DEFENDANT: Yes.

THE COURT: Yes, sir.

MR. DAVIS: I understand that her status at this point is that she is incarcerated, and it's probably mandatory unless there's some extenuating circumstance. I know the Court's position on family issues, but she does have four children. There have not been any actions taken at this point for any permanent or temporary guardianship, getting them registered in school and things of that nature. We would ask the Court if you would allow her to self-report and order home incarceration with the exception of registering the kids in school so that she can try to get some semblance or some order for the kids.

If the Court will recall, the last time we were here, you allowed her to stay out pending sentencing. And I think she had a marijuana positive, so you incarcerated her at that time. So we're just simply asking you reinstate her conditions, add the condition of home incarceration so she can be able to get her kids straightened out.

THE COURT: Here's the question for you, Ms. Thomas. Who is taking care of your children now?

THE DEFENDANT: My auntie.

THE COURT: Your auntie is.

Mr. Davis, I'm going to deny your request.

Here's the way the law works. When you are found guilty of a drug crime that carries with it up to ten years, I'm supposed to take you into custody then. We allowed you to stay out, but I definitely would have taken you into custody today. Mr. Davis's point is at least you would have had some time to get your kids straight before -- well, we were coming back for sentencing then, though, Mr. Davis. The circumstances would still be the same. She just would have gone into custody the last time instead of this time, so I'm going to overrule the request or deny the request.

All right. Is there anything else we need to take up?

MS. O'LEARY: Your Honor, there's just a small housekeeping matter of I believe we still have a pending superseding petition for revocation of her pretrial --

THE COURT: I'll deny that request.

MS. O'LEARY: Yes, Your Honor.

THE COURT: We'll recess until one o'clock.

(Proceedings concluded at 12:32 p.m.)

REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/Elaine Hinson, RMR, CRR, CCR Date: April 7, 2023.
United States Court Reporter