IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

UNITED STATES OF AMERICA, Plaintiff,

v.

LAKENDRA SAMON THOMAS, Defendant.

No. 3:20-cr-00005-BSM-2

May 20, 2021
9:24 a.m.

Little Rock, Arkansas

**TRANSCRIPT OF CHANGE OF PLEA**
BEFORE THE HONORABLE BRIAN S. MILLER,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

On Behalf of the Government:

ERIN O'LEARY, Assistant United States Attorney
BART DICKINSON, Assistant United States Attorney
U. S. Attorney's Office
P.O. Box 1229
Little Rock, Arkansas 72203-1229

On Behalf of the Defendant:

RONALD L. DAVIS, JR., Attorney at Law
Ronald L. Davis, Jr. Law Firm, PLLC
P.O. Box 3432
Little Rock, Arkansas 72203

Proceedings commencing in open court at 9:24 a.m.)

THE COURT: Mr. Davis, is Ms. Thomas ready?

MR. DAVIS: We are, Your Honor.

THE COURT: Okay. Here, well, let's call the case. This United States of America versus Lakendra Thomas. The case number is 20-CR-05. Ms. Thomas is in the courtroom with her lawyer Ron Davis, Jr. The United States is being represented by Erin O'Leary and Bart Dickinson.

Ms. Thomas, before we get started, would you raise your right hand so I can swear you in?

Do you swear to tell the truth, the whole truth, and nothing but the truth so help you God or under penalty of perjury?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And do this for me: I can barely hear you. You can put your hand down. Make sure that your microphone is on and speak directly into the microphone so that we can hear you.

As you can tell, I am not in the courtroom in Little Rock. I am in the courthouse down in Helena. This is a case that is set for trial on Monday, May the 24th. And this is Thursday, May the 20th. And we heard yesterday that you wanted to enter a plea of guilty.

Do you have any objection to my not appearing physically in the courtroom --

THE DEFENDANT: No, sir.

THE COURT: -- to take your plea?

Okay. And let me get a little bit -- some more background information from you.

How old are you, Ms. Thomas?

THE DEFENDANT: I'm 28.

THE COURT: And how much education do you have?

THE DEFENDANT: Some college.

THE COURT: And have you had any drugs, alcohol, or any type of medication that would make it difficult for you to understand what we're doing today?

THE DEFENDANT: No, sir.

THE COURT: And do you understand why you're in the courtroom this morning?

THE DEFENDANT: I do.

THE COURT: And you've been represented by Mr. Davis. Have you had a chance to sit down with Mr. Davis to go over your case with him?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with the legal representation he has given you so far?

THE DEFENDANT: Yes.

THE COURT: Okay. Mr. Davis, have you had a chance to talk to Ms. Thomas today?

MR. DAVIS: I have, Your Honor.

THE COURT: Is there anything about Ms. Thomas that would lead you to believe that she is not competent to go forward with the plea?

MR. DAVIS: No, sir.

THE COURT: All right. I find the Defendant Lakendra Thomas competent to go forward with the plea.

Now, Ms. Thomas, it's my understanding that you want to withdraw your previous pleas of not guilty to Counts 1 and 2 of the superseding indictment of July the 7th of 2020, and that you would like to enter pleas of guilty; is that true?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. I'm going to read the indictment to you. I know that you've read it. But I need to make a record that you know what you're being charged with and you know what you're entering a plea of guilty to.

Count 1 says, from in or about April 2019 until on or about January 15, 2020, in the Eastern District of Arkansas, Eiichi Moore, Lakendra Thomas, Cordero Harris, and Jullian Woods voluntarily and intentionally conspired with each other and with others unknown to the grand jury to knowingly and intentionally distribute and possess with intent to distribute 50 grams or more of methamphetamine actual.

Count 2 states that, on or about April 9, 2019, in the Eastern District of Arkansas, Eiichi Moore and Lakendra Thomas knowingly and intentionally distributed 50 grams or more of

methamphetamine actual.

Now, Ms. Thomas, are those the counts to which you want to enter pleas of guilty?

THE DEFENDANT: Yes.

THE COURT: Now, I'm about to go over all of your rights with you. And I understand that Mr. Davis has gone over your rights with you. But I'm going to go back over those with you now because I have to have a record that you understand what your rights are and that you're freely giving up those rights to enter this plea of guilty.

Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Now, Ms. Thomas, you understand that you're not required to enter a plea of guilty and that you have a right to a trial. And, in fact, this case is set for trial on Monday. And at that trial, you have the presumption of innocence, which means you don't have to prove or disprove anything. The government has to prove the case against you beyond a reasonable doubt.

And because of that presumption of innocence, you have the right to be free from self-incrimination. Now, Ms. Thomas, all that means is that you don't have to testify; that the government can't come in here and put you on the witness stand and make you testify against yourself.

Now, in a case like this, the government would put on its

witnesses who would testify as to what they know about the case. And those witnesses, you know, are probably law enforcement officials, anybody who bought or sold methamphetamine to the people involved in this, or anybody else who knows something about the case. We probably also would hear from somebody from a crime lab who would testify as to what methamphetamine is, the weight and value of the methamphetamine that was bought and sold in this conspiracy, those types of things.

Now, when the government puts on its witnesses, you have the right to confront those witnesses. And the way you do that is Mr. Davis would cross-examine them and ask them questions to make sure that the testimony they are giving is truthful and accurate.

Also, the government will probably come in here with physical evidence, like the methamphetamine itself, photos of the crime scene, anything like that that could help it explain to the jury what happened in this case.

Now, understand this: That when the government attempts to offer those items into evidence, you have a right to object to that. And then it would be up to me to determine whether those items properly come into evidence.

Now, once the government puts on its case, then you have a right to call witnesses to testify for you. Like I said, you don't have to prove or disprove anything, but if you want to

have someone testify or if you know somebody who could testify on your behalf or if you want to take the witness stand and tell the jury what happened or what didn't happen and testify yourself, you have the right to do that.

Just understand that, if you testify or if you call witnesses to testify, then the jury would have -- I mean, the government would have the right to cross-examine you and your witnesses to make sure that the testimony you are giving is truthful and accurate.

Also, if you have documents that you want to introduce into evidence, you have the right to offer them and then the government has a right to object to your documents the same as you have a right to object to theirs.

Now, once all the evidence is in, the jury will just go back to the jury room and determine if the government proved the case against you beyond a reasonable doubt. If the jury determines that the government proved the case against you, it will find you guilty. If the jury determines that the government did not prove the case against you, then it will find you not guilty.

Now, understand this, that the jury has to be unanimous, which means all 12 jurors have to agree on the verdict. So either all 12 of them are going to find you guilty or all 12 of them are going to find you not guilty. And if they can't agree -- if they cannot agree, then I would have to declare a

mistrial. And it would be up to the government to determine if it wants to bring your case back to trial.

Now, if the jury finds you guilty -- well, first, let me go through this. If the jury finds you not guilty, your case is over, and the government cannot bring this case against you again based on these facts.

If the jury finds you guilty, then you have a right to an appeal. On appeal your case would go to three judges sitting in St. Louis who would not hear new evidence.

Do you see the court reporter sitting in the courtroom?

THE DEFENDANT: Yes.

THE COURT: She would also be at trial, and she would type up everything we say just like she's doing right now. And then what would happen is we would send a copy of the transcript of the trial to the Court of Appeals in St. Louis.

Mr. Davis or whoever represents you on appeal would file a document with the Court of Appeals called a "brief," in which he would explain all of the mistakes I made during the course of your trial, and he would argue that those mistakes caused you to lose your trial. In the law, that's called "error." But all that means is a mistake that I made.

In response, the government would file a brief and argue that either I didn't make any mistakes or that, if I did make mistakes, it was not the mistakes that caused you to lose but it was all the properly admitted evidence that caused you to

lose.

And then the Court of Appeals will just read those briefs, read the transcript of the trial, and determine if I made mistakes that caused you to lose. If they determine I did make a mistake that caused you to lose your trial, they would reverse the jury's verdict, send the case back down here, and we would try your case again. If the Court of Appeals determines that I did not make a mistake that caused you to lose, it will affirm the jury's verdict, and your case would be over.

Now, do you understand that, by entering this plea of guilty, you are giving up all of these rights?

THE DEFENDANT: Yes, sir.

THE COURT: And all that really means is that we won't have a trial and you won't cross-examine witnesses and all of that but that I will enter a judgment of guilty based on the plea you enter here today.

Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Now, do you understand that, by entering this plea of guilty, if you don't have a felony conviction on your record, that this will cause you to lose certain valuable civil rights like the right to vote, the right to own a firearm, and the right to hold public office?

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And do you also understand that, in the federal system, we do not have an expungement law. You know, in state court, if you're found guilty on a first-time offense, many times you can come back later and have your record sealed or expunged. In the federal system, we do not have a law that allows me to do that, so this will go on your record, and I don't have a way of removing it.

Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Now, have you had a chance to speak with Mr. Davis about the possible sentence you could receive?

THE DEFENDANT: Yeah, we talked about it.

THE COURT: Yeah. That's usually the main thing people talk about -- that's not the main thing. That's one of the main things people typically want to know before they come in and enter a plea of guilty.

And let me tell you this, because I've had this come up a lot. You know, Mr. Davis and I used to -- I don't think we ever tried a case together, but we used to have cases together down in Phillips County, Arkansas some years ago.

And what he will tell you is that in state court he knows, when he walks into a courtroom and his client enters a plea of guilty, what the client -- what the sentence is going to be,

because usually that's worked out on the front end in state court.

One of the problems with federal -- I won't say a "problem." I will say one of the procedures with federal court is is that, when you enter a plea of guilty, you don't know what your sentence is going to be, because what we do in the federal system is I don't sentence you today. We send the probation office out to do an investigation to look to see if you have prior felony offenses or what your criminal history is. We have them look into your family history, work history, all of these other factors.

And then they prepare a report. Once that report comes to me, then I know -- well, I use the information in that report to determine what your sentence is going to be.

And so I know that, with you sitting here today, you probably wanted to know what your sentence would be today, but that is just not the way the federal system works.

What I can tell you is that, in the federal system, we have our law that tells me what the minimum and maximum sentences are that I can give you. And I have to give you a sentence within the range provided by the law. In addition to the law, we have sentencing guidelines. And I am not required to give you a sentence within the range provided by the guidelines as long as I give you a sentence within the range provided by the law.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, with regard to the guidelines, one of the reasons why I can't sentence you today is because, when probation does its investigation, it will calculate your guidelines range based on -- you know, you'll get a certain number of points for this conviction, a certain number of points for your previous convictions, if you have any, and then they calculate your guidelines range, and I don't have all of that information today. So I cannot tell you what your guidelines range is.

What I can tell you is that, based on the law, for Counts 1 and 2, the conspiracy counts to distribute and possess 50 grams or more of methamphetamine and knowingly and voluntarily distributing 50 grams or more of methamphetamine, in the federal system, the law says that your sentencing range is not less than 10 years but all the way up to life of imprisonment, a fine of up to $10 million, not more than five years of supervised release, and a $100 special assessment for each count, which adds up to $200 in the special assessment, and probation is not authorized.

Do you understand that, Ms. Moore -- I mean Ms. Thomas?

THE DEFENDANT: Yes, sir.

THE COURT: Now, like I said, I can't tell you what your guidelines range is going to be. What I can tell you is

that you understand that, if I were to give you a sentence longer than what you expect, that you will not be allowed to withdraw your plea of guilty --

THE DEFENDANT: Yes, sir.

THE COURT: -- when we get to sentencing?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And do you understand that we don't have parole in the federal system, so you won't go to a parole board or before a parole board and get out early?

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Now, there is not a plea agreement in this case. So having discussed --

Mr. Davis, you were about to say something?

MR. DAVIS: Oh, at the appropriate time.

THE COURT: I saw you moving.

MR. DAVIS: I apologize.

THE COURT: I was wondering if you were going to make a statement.

MR. DAVIS: I was going to wait for you to come up for air a little bit, but I was going to, basically, say there is an important record that needs to be made with regard to the previous plea offers and the like before we get into the actual plea.

THE COURT: Let's do that. Let's make a record of

that now.

MR. DAVIS: Yes, sir.

THE COURT: Because I'm moving forward with the portion of the hearing where I was going to ask whether she pled guilty or not, so put your -- make your record.

MR. DAVIS: Yes, sir. And, Judge, I would welcome Counsel, if I need help with the chronology of events, to step in. And I think Ms. Thomas will understand why here shortly.

Essentially, Judge, this case is not terribly old but is a case that has been set for trial, pandemic and all, and delayed a couple times, I believe. But there was an offer made -- I won't get into the specifics of the offer. But there was an offer made that would have put my client in a much better position. And, of course, either dealing with a 5K or Rule 35, she declined to make -- to accept those offers. There were time limits given and extended through the graciousness of the government on a couple different occasions. My client has declined to accept the offer that was made to her.

And I want the record to reflect that those offers have all been essentially one offer -- we had some other discussion more recently -- was communicated to my client, and she declined to accept it within the initial plea deadline. I shouldn't say, "plea deadline," but acceptance deadline.

And then it was reopened, and there was further negotiation as late as yesterday, and we have not been able to

reach an agreement.

What is of great significance in this case, it is a mandatory minimum of a 10-year sentence for both counts. We believe they will be grouped. That's a matter that, I think, was not as significant at this point. I'm fairly certain they will be.

But there is the issue of firearms and my client's eligibility for the safety valve that will be litigated. Both parties understand what those issues are. I have explained them to my client that the only way at this point she gets below the mandatory minimum is if the safety valve applies. There will be an issue as to whether it applies or not, dealing mostly with the issue of whether the firearms would be attributable to her insofar as sentencing is concerned.

In addition to that, Judge, the base offense level for her actual involvement is a couple points lower than if it is the level with regard to the conspiracy itself. That can make a significant difference. I say, "significant." Any time is significant to me, but make a difference in the base offense level.

These things have been explained to my client as best I can, considering they are somewhat complex concepts. But what is important is that she acknowledges that we have explained these and what the ramifications of whether we get to where we can make an argument below 10 years or not depends on whether

the Court rules that she is entitled to the safety valve.

THE COURT: And what are you thinking? And I guess I should never ask what you're thinking because I don't want you to put too much on the record. But the discussions with the government initially were such that you believed that safety valve would apply. Now, those arrangements are not in place.

And so is it your thought that it may or may not apply? What is your thought?

MR. DAVIS: Judge, let me be more clear. I think the government's position has always been that the safety valve would not apply because of the firearms that would be at issue in this case.

THE COURT: Okay.

MR. DAVIS: However, I think the Court understands what I mean by "5K" or "Rule 35" --

THE COURT: Yes.

THE DEFENDANT: -- would be something that would have been beneficial to my client. She's declined to accept that offer.

THE COURT: I understand.

All right. Does the government want to be heard on this at all? You don't have to because I think Mr. Davis was just attempting to make a record. I will come back and ask Ms. Thomas does she understand what Mr. Davis has put on the record. But does the government want to respond at all?

MS. O'LEARY: Your Honor, I believe that Mr. Davis has fairly characterized the communications we've had with him and the status of Ms. Thomas's case at this time.

THE COURT: Okay. And, Ms. Thomas, did you hear or listen to the statement that Mr. Davis just made?

THE DEFENDANT: I did.

THE COURT: And is his statement accurate?

THE DEFENDANT: Yes, sir. No, I don't have anything to say. I think I clearly understand him.

THE COURT: Okay. I understand.

And, Mr. Davis, is there anything you want to put on the record at this point?

MR. DAVIS: I don't think so, Judge. No.

THE COURT: Okay. Now, Ms. Thomas, having discussed your rights with you, do you still want to enter a plea of guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Have any threats or promises been made to you to get you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Are you pleading guilty voluntarily?

THE DEFENDANT: Yes.

THE COURT: Okay. And, Ms. O'Leary, are you or Mr. Dickinson going to provide the facts?

MS. O'LEARY: I will, Your Honor.

THE COURT: Okay. Would you provide a brief statement of what facts you would put on if we were to have a trial on Counts 1 and 2 of the superseding indictment of July 7, 2020?

MS. O'LEARY: Yes, Your Honor.

From in or about April 2019 until on or about January 15 of 2020, in the Eastern District of Arkansas, the Defendant Lakendra Thomas, conspired with Eiichi Moore, Cordero Harris, Jullian Woods, and others to possess with the intent to distribute and to distribute 50 grams or more of methamphetamine actual. The defendant voluntarily and intentionally entered the agreement with full knowledge and understanding of the agreement.

On April 9 of 2019, in Jonesboro, Arkansas, the defendant, along with Eiichi Moore, distributed methamphetamine to a cooperating individual in exchange for $3,500.

The methamphetamine distributed by the defendant was analyzed by the DEA southeast laboratory and was confirmed to be 436.1 grams of methamphetamine with a purity of 100 percent, rendering 436.1 grams of methamphetamine actual.

And, Your Honor, for the record, my understanding is Ms. Thomas also agrees to the forfeiture allegations that are contained in the superseding indictment.

MR. DAVIS: That's correct, Your Honor.

THE COURT: Okay. All right. Ms. Thomas, did you

listen to the statement given by the U. S. Attorney?

THE DEFENDANT: I did.

THE COURT: Was her statement accurate?

THE DEFENDANT: Yes, sir.

THE COURT: And do you understand the nature of the charge against you and the maximum penalties you face?

THE DEFENDANT: Yes, sir.

THE COURT: How do you plead to Count 1 of the July 7, 2020, superseding indictment?

THE DEFENDANT: Guilty.

THE COURT: And how do you plead to Count 2?

THE DEFENDANT: Guilty.

THE COURT: Did you, in fact, commit the offenses as charged in Counts 1 and 2 of the superseding indictment?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And, Mr. Davis, do you know of any reason why I should not accept Ms. Thomas's plea of guilty?

MR. DAVIS: I do not, Your Honor.

THE COURT: All right. I find that the offenses, as charged in Counts 1 and 2 of the July 7, 2020, superseding indictment, were committed by the Defendant Lakendra Thomas. I also find that Ms. Thomas is entering this plea of guilty voluntarily and with full knowledge of the facts, her rights, and the consequences she faces. For those reasons, I accept the guilty plea.

Now, there aren't any other counts against Ms. Thomas; is that right?

MS. O'LEARY: That's correct, Your Honor. Just the pending indictment.

THE COURT: Okay. Do you move to dismiss the underlying indictment?

MS. O'LEARY: I do, Your Honor, against Ms. Thomas.

THE COURT: Yeah. And it's granted. And it's already been superseded by this one, but we'll dismiss the underlying indictment against Ms. Thomas.

Now, Ms. Thomas, what will happen at this point -- and we talked about it a little bit earlier -- probation will come out and perform the investigation -- I explained it to you earlier -- and will prepare a report.

A copy of that report will go to Mr. Davis, and a copy will go to the government. And Mr. Davis will sit down with you and go over the report. What I ask you to do is look at it very closely to make sure that the information contained in it is the information -- is accurate information, because that is going to be the information I use to determine what an appropriate sentence is for you.

If there is anything that is not correct, let Mr. Davis know. He'll file an objection. And, normally, those objections can be worked out with probation. If they can't work it out, then we'll have to have a hearing to determine

what's what. Once we get all of that worked out, we'll bring you back for sentencing.

Now, here's the issue, Mr. Davis. I'm sure you probably explained to Ms. Thomas. This is a case that carries with it up to 10 years of imprisonment or more, and it's a drug offense, so it's a mandatory detention case unless there is some type of circumstance, special circumstance, that would allow her to remain out.

Do you want to make a record on that?

MR. DAVIS: I do, Your Honor. I anticipated the Court inquiring about this. Ms. Thomas's primary issue right now, Judge, is securing a place for her children. She has four very young children, ages 11, 7, 5, and 4. I think one of them may have some special needs as well, Judge. And she is in the process of attempting to have them placed with family members so the Department of Human Services doesn't have to get involved, during this issue of COVID and all that's going on, with trying to get these kids place.

For the most part, I don't think she's had any significant issues on pretrial. I think we went back, I think, one time for something, but for the most part, she has complied with them. Even if the Court were to give her an extra or additional condition of home detention or something of that nature, I think the best interest of these kids is for her continuing to work to getting these kids placed in a place

where they can continue their school routines and get placed with family members rather than through the Department of Human Services.

THE COURT: Let me say this -- and I'll hear from the government in a second -- typically, I don't find placement of children as a special circumstance that would allow a person to stay out pending sentencing, because it's a mandatory detention case.

Here's the issue though. This is a case that we were scheduled to try on Monday, and it would have lasted, from my understanding, about a week if we had had everybody in it. And so, you know, Ms. Thomas -- I don't know if the idea is she might have prevailed at trial or whatever would happen. I don't know. So she would have had to have started getting somebody in place for her children anyway if she thought there was even a chance for her to be taken into custody.

At the same time, because we just got notice of this plea yesterday and if Ms. Thomas finally -- sometimes it's hard to get in your mind that you're going to walk into a federal courtroom and enter a plea of guilty to a crime. And if she just came to that resolution on Monday night or Tuesday night or Wednesday night, then I don't know if she would have had everything in place by today.

Ms. O'Leary, what is the government's position on this?

MS. O'LEARY: Your Honor, I defer to the Court.

THE COURT: You know, I had a case yesterday where I was -- Mr. Davis, I'll say this to you and Ms. O'Leary, where I had somebody who came in and entered a plea of guilty, and it was one of those cases where the government, in exchange for the person resolving the case, said that the government wouldn't take a position on it, therefore, you know, not objecting to the person staying out. And I still almost took him into custody because of the statute and what it says.

Here's what I'll do: I will find special circumstances here. Although I will be very honest with you, Mr. Davis, I don't know that there really are extraordinary circumstances here, because I think this is an issue that many mothers and fathers who may be going to prison face, you know, finding child care for their children. But I will find an extraordinary circumstance here.

Ms. Thomas, you will remain on the same bond conditions that you've been on. And I think you haven't had any problems since you've been out, so I don't think that's a problem. But that's what I'll find. And I'll let you remain out pending the sentencing. I will say this, Ms. Thomas: Please get your children -- child situation in order because the likelihood of me taking you into custody at sentencing and not allowing you to self-report is probably greater considering that this is a mandatory detention case.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Is there anything else we need to take up on this case?

MR. DAVIS: Not from us, Your Honor.

MS. O'LEARY: No, Your Honor.

THE COURT: All right. Let's stand down. And let's get ready. I see everybody lined up for our next hearing, so let's move directly into it now if we can.

MR. DAVIS: May I be excused, Your Honor?

THE COURT: Yes, sir, of course.

(Adjourned at 9:52 a.m.)

-oOo-

REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript of proceedings in the above-entitled matter.

/s/ Suzanne M. McKennon, CSR, CRR, RMR
United States Court Reporter

Date: 04/04/2023